**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **ADAM DANIEL HENDERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 2:24-cv-170-CWB** |
| | ) | |
| **MARTIN O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

### I.     Introduction and Administrative Proceedings

Adam Daniel Henderson ("Plaintiff") filed an application for Supplemental Security Income under Title XVI of the Social Security Act on April 13, 2021—alleging disability due to schizophrenia, bipolar disorder, chronic crystal methamphetamine disorder, and suicidal thoughts/ideations.   (Tr. 35, 108, 117).[1, 2]   The claim was denied at the initial level on September 14, 2021 and again after reconsideration on April 20, 2022.   (Tr. 108-127). Plaintiff then requested *de novo* review by an administrative law judge ("ALJ").   (Tr. 169-71). After a hearing, the ALJ found Plaintiff not disabled on November 25, 2022.  (Tr. 131-45).

On May 24, 2023, however, the Appeals Council vacated the ALJ's decision and remanded the case back to the ALJ.  (Tr. 150-54).   The ALJ conducted a new hearing on August 16, 2023 and took testimony from Plaintiff, Plaintiff's father, and a vocational expert.

---

[1] References to pages in the transcript are denoted by the abbreviation "Tr."

[2] Although Plaintiff initially alleged a disability onset date of March 3, 2021 (Tr. 108), this appeal requires a showing of disability between the date of the April 13, 2021 application and the date of the ALJ's August 25, 2023 decision.  *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file.") (citation omitted).

(Tr. 42-82).  The ALJ took the matter under advisement and issued a written decision on

August 25, 2023 that found Plaintiff not disabled.  (Tr. 17-35).

The ALJ's written decision contained the following enumerated findings:

1. The claimant has not engaged in substantial gainful activity since April 13, 2021, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: schizophrenia; stimulant use disorder; cannabis use disorder; and borderline intellectual functioning (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can only perform simple, routine, and repetitive tasks but not at a production rate pace where the pace of one's work affects, or is affected by, the pace of other's work or by any externally controlled system or process.  He can only respond appropriately to occasional changes in a routine work setting.  He can only have occasional, superficial interaction with co-workers and the public, with "superficial" defined as such things as providing the time of day or directions about the workplace.

5. The claimant is capable of performing past relevant work as a machine tender (DOT No. 754.685-014), SVP 2 unskilled work requiring light exertion as generally and actually performed; and stacker (DOT No. 929.687-030), SVP 3 semi-skilled work requiring heavy exertion as generally performed and light exertion as actually performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

6. The claimant has not been under a disability, as defined in the Social Security Act, since April 13, 2021, the date the application was filed (20 CFR 416.920(f)).

(Tr. 20, 25, 33, 35).  On January 11, 2024, the Appeals Council denied Plaintiff's request for

review (Tr. 1-5), thereby rendering the ALJ's decision the final decision of the Commissioner.

*See, e.g., Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

Plaintiff now asks the court to reverse the final decision and to award benefits or, alternatively, to remand the case for a new hearing and further consideration.  (Doc. 1 at p. 3; Doc. 8 at pp. 1, 15).  The court finds the case to be ripe for review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3); specifically, the court construes Plaintiff's supporting brief (Doc. 8) as a motion for summary judgment and the Commissioner's opposition brief (Doc. 11) as a competing motion for summary judgment.  Upon consideration of the parties' submissions, the relevant law, and the record as a whole, the court concludes that Plaintiff's motion for summary judgment is due to be denied, that the Commissioner's motion for summary judgment is due to be granted, and that the final decision is due to be affirmed.[3]

## II.     Standard of Review and Regulatory Framework

The court's review of the Commissioner's decision is a limited one.  Assuming the proper legal standards were applied by the ALJ, the court is required to treat the ALJ's findings of fact as conclusive so long as they are supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.") (citations omitted).  The court thus may reverse the ALJ's decision only if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *See Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  Reversal is not warranted

---

[3] As contemplated by 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the exercise of full jurisdiction by a United States Magistrate Judge. (Docs. 9 & 10).

simply because the court itself would have reached a different result.  *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).  Despite the deferential nature of its review, however, the court must look beyond those parts of the record that support the decision, must view the record in its entirety, and must take account of evidence that detracts from the evidence relied on in the decision.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986); *see also Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish entitlement for a period of disability, a person must be unable to:

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[4]  To make such a determination, the ALJ employs a five-step sequential evaluation process:

(1) Is the person presently unemployed?

(2) Is the person's impairment severe?

(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?

(4) Is the person unable to perform his or her former occupation?

(5) Is the person unable to perform any other work within the economy?

An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[4]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  *See also* 20 C.F.R. §§ 404.1520 & 416.920.[5]

The burden of proof rests on the claimant through step four.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004); *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of a qualifying disability once he or she has carried the burden of proof from step one through step four.  *Id*.  At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform.  *Id*.

In order to assess the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Phillips*, 357 F.3d at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform.  *Id*. at 1239.  To do so, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE").  *Id*. at 1239-40.  The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently

---

[5]  "[T]he law and regulations governing a claim for disability benefits are identical to those governing a claim for supplemental security income benefits.*"  Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986).  Therefore, cases arising under Title II are appropriately cited as authority in Title XVI cases, and vice versa.  *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 875 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income."); *Claudia S. v. Saul*, No. 1:18-CV-01896, 2019 WL 3059745, *1 (N.D. Ga. July 12, 2019) ("[T]o the extent that the Court cites to DIB cases, statutes, or regulations, they are equally applicable to Plaintiff's SSI claims, and vice versa.").

limit the number of jobs realistically available to an individual, and combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id*. at 1240.

## III.    Issues on Appeal

Plaintiff essentially raises two issues on appeal:  (1) whether the ALJ properly evaluated the evidence in determining Plaintiff's mental RFC; and (2) whether the ALJ properly evaluated Plaintiff's and his family's subjective complaints.  (Doc. 8 at p. 1).

## III.    Discussion

### A.    Evaluation of the Evidence in Determining Plaintiff's Mental RFC

Plaintiff argues that the ALJ failed to properly recognize the severity of his psychological impairments/limitations in the four "paragraph B" areas of functioning and the findings of Fernelle L. Warren, Ph.D., an examining psychologist, who found that Plaintiff was at least moderately-to-markedly impaired.  (Doc. 8 at p. 6).  Plaintiff maintains that because the ALJ underestimated the severity of his psychotic disorder generally, his RFC was not supported by the record.  (*Id*. at pp. 6, 10).  Additionally, Plaintiff argues that the ALJ erred in evaluating the medical opinions and that Dr. Warren's opinion, as an examining psychologist, deserved more weight than non-examining State agency sources.  (*Id*. at p. 10).  Thus Plaintiff in essence is arguing that the record supports a more limited finding than reflected by the RFC and that the ALJ failed to expand on the limitations found in the psychiatric review technique analysis and Dr. Warren's opinion when determining the RFC.  (*Id*. at p. 10).  In response, the Commissioner contends that the ALJ properly considered Plaintiff's mental impairments and reasonably accounted for his mental limitations.  (Doc. 11 at p. 4).

When a claimant has presented a colorable claim of mental impairments, the ALJ is required to complete a Psychiatric Review Technique Form ("PRTF") to evaluate severity. *Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); 20 C.F.R. § 416.920a(a). The ALJ must rate how a claimant's mental impairments impact four broad functional areas known as the "paragraph B" criteria: "Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3); *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324 (11th Cir. 2021). In rating the degree of limitation in each of those areas, the ALJ utilizes the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4). "The ALJ must incorporate these results into the findings and conclusions." *Burns v. Comm'r, Soc. Sec. Admin.*, No. 22-11181, 2023 WL 5607883 at *2 (11th Cir. Aug. 30, 2023); 20 C.F.R. § 416.920a(e)(4). "The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of mental impairment(s)" and "must include a specific finding as to the degree of limitation in each of the functional areas described [above]." 20 C.F.R. § 416.920a(e)(4).

"To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an 'extreme' limitation in one of the four functional areas or a 'marked' limitation in two." *Buckwalter*, 5 F.4th at 1325; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). A "mild" limitation indicates that a claimant's functioning is "slightly limited," whereas a "moderate limitation indicates that a claimant's functioning is "fair." *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(2)(b), (c). The ALJ considers all of the relevant medical and non-medical evidence in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. *Id*.; 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a)-(b). "The

ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four." *Id.*; *see also Jacobs v. Comm'r of Soc. Sec.*, 520 F. App'x 948, 950 (11th Cir. 2013) (The PRTF "is separate from the ALJ's evaluation of the claimant's RFC assessment, the latter of which is an assessment of the claimant's ability to do work despite his impairments.  The mental RFC assessment is a more detailed assessment of the claimant's functionality.") (internal citations omitted).  "[T]hough the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE." *Buckwalter*, 5 F.4th at 1325.

An RFC determination is an assessment of what a claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Phillips*, 357 F.3d at 1238-39; *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997); 20 C.F.R. § 416.945(a)(1) ("Your residual functional capacity is the most you can still do despite your limitations.").  "[T]he task of determining a claimant's [RFC] and ability to work rests with the [ALJ], not a doctor." *Moore v. Soc. Sec. Admin., Comm'r*, 649 F. App'x 941, 945 (11th Cir. 2016); *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's residual functional capacity is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive."); *Frank v. Comm'r of Soc. Sec.*, No. 2:20-CV-962, 2022 WL 598036 at *8 (M.D. Fla. Feb. 10, 2022), *report and recommendation adopted*, No. 2:20-CV-962, 2022 WL 596833 (M.D. Fla. Feb. 25, 2022) ("[T]here is no requirement that an ALJ base the RFC finding on a medical source's opinion.").

"To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has 'provide[d] a sufficient rationale to link' substantial record evidence 'to

the legal conclusions reached.'" *Eaton v. Colvin*, 180 F. Supp. 3d 1037, 1055 (S.D. Ala. 2016) (citations omitted). Although an RFC determination must be supported by substantial evidence, the ALJ "is not required to specifically address every aspect of an opinion or every piece of evidence in the record" in order for the determination to be affirmed. *Coley v. Comm'r of Soc. Sec.*, 771 F. App'x 913, 917 (11th Cir. 2019); *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) ("[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is 'not enough to enable [the district court ... ] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.'") (citation omitted). Moreover, "to find that the ALJ's RFC assessment is supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician." *Smoke v. Kijakazi*, No. CV 21-0206, 2022 WL 721532 at *4 (S.D. Ala. Mar. 9, 2022).

Claims filed on or after March 27, 2017 are reviewed under the revised regulations. *See* 82 FR 5844-01, 2017 WL 168819 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The revised regulations no longer use the phrase "treating source" but instead use "your medical source(s)." *See* 20 C.F.R. §§ 404.1520c, 416.920c; *Nix v. Saul*, No. 4:20-CV-00790, 2021 WL 3089309 at *5 (N.D. Ala. July 22, 2021). For claims governed by the revised regulations, the agency thus "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 898 (11th Cir. 2022). "Further, the regulations governing claims filed on or after March 27, 2017, no longer mandate particularized procedures that the adjudicator must follow in considering opinions from treating sources (*e.g.*, requirement that adjudicators must 'give good

reasons' for the weight given a treating source opinion)." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(b)). Instead, the "new regulations require an ALJ to apply the same factors when considering the opinions from *all* medical sources." *Simon v. Kijakazi*, No. 8:20-CV-1650, 2021 WL 4237618 at *3 (M.D. Fla. Sept. 17, 2021) (emphasis in original) (citing 20 C.F.R. § 404.1520c(a)).

Stated differently, in evaluating the persuasiveness of the medical opinion(s) or prior administrative medical finding(s), "[the agency] will consider those medical opinions or prior administrative medical findings from that medical source together" using the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c), 416.920c(a), (c). "The most important factors … [used to] evaluate the persuasiveness of medical opinions and prior administrative medical findings are supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2); *Simon*, 2021 WL 4237618 at *3. Therefore, "the ALJ must explain how he or she considered the supportability and consistency factors." *Wynn v. Kijakazi*, No. 8:20-CV-2862, 2022 WL 1115296 at *4 (M.D. Fla. Apr. 14, 2022). "The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors." *Nix*, 2021 WL 3089309 at *6 (citing 20 C.F.R. § 404.1520c(a)-(c)). "However, the ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record." *Thaxton v. Kijakazi*, No. 1:20-CV-00616, 2022 WL 983156 at *8 (M.D. Ala. Mar. 30, 2022); *Williamson v. Kijakazi*, No. 2:20-CV-772, 2022 WL 2257050 at *3 (M.D. Ala. June 23, 2022). Moreover, "'[t]he ALJ may but is not required to explain

how he considered the other remaining factors.'" *Id*. at *4 (citation omitted); 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).   And the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources."   20 C.F.R. §§ 404.1520c(d), 416.920c(d). Further, "[t]he ALJ is under no obligation to 'bridge' every piece of evidence he finds inconsistent with a specific opinion. ...   Nothing requires the ALJ to discuss every piece of evidence so long as the decision does not broadly reject evidence in a way that prevents meaningful judicial review."   *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-CV-366, 2021 WL 4261218 at *9 (M.D. Fla. Sept. 20, 2021) (citations omitted).

The ALJ rated Plaintiff as having moderate limitations in the functional areas of "understanding, remembering, or applying information," "interacting with others," "concentrating, persisting, or maintaining pace," and "adapting or managing oneself." (Tr. 20-22); *see also* 20 C.F.R. § 416.920a(c)-(d).  As the ALJ explained:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(Tr. 25); *see also* 20 C.F.R. §§ 416.920(a)(4), 416.920a(b)-(d).

In finding at step three that Plaintiff had moderate limitations in "understanding, remembering, or applying information," the ALJ cited Plaintiff's self-completed function report, in which Plaintiff stated that he did not need reminders to take care of personal needs, grooming, or medication, that while he reported being unable to pay bills or use a checkbook/money order he could count change and handle a savings account, that he did not need reminders to go to places, that he would make "a couple of mistakes" regarding following written instructions but that things

"would turn out good," and that he had to write down spoken instructions.  (Tr. 20, 445-46, 448). The ALJ also considered third-party function reports and handwritten notes from Plaintiff's mother, which the ALJ found alleged a greater degree of limitation in this area than Plaintiff alleged or the objective medical evidence supported—such as stating that Plaintiff needed reminders to take care of personal needs, grooming, and medication and that he forgot where he placed things.  (Tr. 20, 434, 476).

The ALJ further considered medical records that showed Plaintiff was hospitalized from January 2019 until February 2019, from November 2019 until December 2019, and from February 2021 until March 2021.  (Tr. 20, 595-996).  The ALJ noted that admission records from the hospitalizations indicated that Plaintiff had impaired memory during intake, but the ALJ further noted that Plaintiff had positive urine drug screens at intake, that Plaintiff's memory improved after receiving appropriate treatment, and that his memory was adequate by discharge.  (Tr. 20, 601, 616, 712-13, 782, 818, 908, 916, 925, 951, 981).  The ALJ further noted that Plaintiff upon his discharge in March 2021 sought formal, consistent treatment through 2023, participating in group therapy and giving positive or limited feedback, and that he continued to present for treatment—with examination notes being largely unremarkable from an understanding and memory perspective.  (Tr. 20-21, 1150-1262).  The ALJ stated that treatment records from 2022 and 2023 showed some instances of issues with Plaintiff's mood but that there was no objective indication that Plaintiff had issues with memory or was unable to understand his treatment plans. (Tr. 21, 1303-1407, 1455-1562).

The ALJ next addressed Plaintiff's March 18, 2022 psychological consultative examination by Dr. Fernelle L. Warren, Ph.D.  (Tr. 21).  The ALJ summarized Dr. Warren's examination, in part, as follows:

On examination, with regards to immediate memory, he was unable to recall 3 objects after a 5-minute delay with interference. However, his recent memory appeared to be intact and his remote memory appeared to be intact. With regards to fund of information, he was able to state how many weeks were in a year and name 3 national lead[er]s. With regards to abstraction, he was able to describe similarities between an apple and orange ("both fruit") but was unable to interpret a proverb. His thought processes were within normal limits but his content of thinking was preoccupied with persecutory delusions. However, at the time of the examination, he denied delusions, hallucinations, suicidal thoughts/ideations, and homicidal thoughts/ideations. Overall, Dr. Warren noted that his response to mathematical and serial tasks, memory functions, fund of information, and ability to think in abstract terms appeared to be inconsistent with a level of functioning estimated to be within the borderline range of intelligence.

(Tr. 21, 1300).

The ALJ noted that Plaintiff was using methamphetamines at the time of the consultative examination and that the evaluation was during the time of admitted methamphetamine use. (Tr. 21, 1299). Considering the record, the ALJ found that Plaintiff only had a moderate limitation in understanding, remembering, or applying information and accounted for this moderate limitation in the RFC by limiting Plaintiff to "only perform[ing] simple, routine, and repetitive tasks but not at a production rate pace where the pace of one's work affects, or is affected by, the pace of other's work or by any externally controlled system or process" and to "only respond[ing] appropriately to occasional changes in a routine work setting." (Tr. 21, 25).

As to "interacting with others," the ALJ noted that in Plaintiff's function report Plaintiff stated that he goes outside "a lot" and that he can go out alone, that he was able to shop in stores approximately once per week for groceries or clothes, that he was able to spend time with others by playing darts or basketball, that he had no problems getting along with family, friends, neighbors, or others, that he got along "really well" with authority figures, and that he had never been fired or laid off from a job because of problems getting along with other people. (Tr. 21, 446-48). The ALJ also noted that a third-party function report and handwritten notes from

Plaintiff's mother alleged a greater degree of limitation in this area than Plaintiff alleged or the objective medical evidence supported—such as stating that Plaintiff did not get along with family, friends, neighbors, or others, that Plaintiff had been fired from a job because of problems getting along with others, that Plaintiff became more stressed with more people around, and that anything could set him off and cause him to have an explosive temper.  (Tr. 21, 437-38, 470, 479, 523).

After examining the objective medical evidence, the ALJ found that Plaintiff only had a moderate limitation in this area, citing that (although Plaintiff had several hospitalizations and intake examination notes from the hospitalizations indicated that Plaintiff endorsed paranoia or delusions as well as suicidal or homicidal ideations) Plaintiff's symptoms appeared to improve once he had detoxed and received appropriate medication.  (Tr. 21-22, 595-996).  The ALJ cited hospitalization records that showed Plaintiff was cooperative, interacted well with staff and peers, and engaged with group therapy, and residential facility records from 2021 following Plaintiff's discharge that showed his participation in group therapy was good and that he gave either positive or limited feedback to others.  (Tr. 22, 1152).  The ALJ also noted that Plaintiff was cooperating with officers regarding some legal issues and that he continued treatment in 2022 and 2023 after he was discharged from the residential facility—with records indicating that he was cooperative and had speech that was normal in rate, rhythm, volume, and reaction time.  (Tr. 22).  The ALJ stated there was no indication of explosive anger but noted that while Plaintiff reported getting angry with his brother "at times" more recent records indicated he was able to calm down after arguing.  (Tr. 22).  The ALJ also considered Dr. Warren's March 18, 2022 consultative examination, which showed that Plaintiff's eye contact was normal and that his productivity and flow of speech was normal, that he spoke in expressive tones and was understandable and coherent, that he had no receptive language deficits that were noted/observed, that when asked how he felt

currently, he reported "alright" and when asked how he felt most of the time, he reported "sluggish," that his affect was appropriate to the situation and that he was oriented to person, place, time, but not date, that he denied delusions, hallucinations, suicidal thoughts/ideations, and homicidal thoughts/ideations, and that the evaluation was during the time of admitted methamphetamine use. (Tr. 22, 1299-1300). The ALJ accounted for Plaintiff's moderate limitation in interacting with others in the RFC by limiting Plaintiff to only having occasional, superficial interaction with co-workers and the public, with "superficial" defined as such things as providing the time of day or directions about the workplace. (Tr, 22, 25).

With respect to "concentrating, persisting, or maintaining pace," the ALJ noted that Plaintiff stated in his function report that he was unable to pay bills or use a checkbook/money order but that he could count change and handle a savings account, that it "depend[ed] on what kind of work" regarding how long he could pay attention but that he could finish what he started, that he would make "a couple of mistakes" regarding following written instructions but that it "would turn out good," and that he needed to write down spoken instructions. (Tr. 22, 446, 448). In considering the third-party function report and hand-written notes by Plaintiff's mother, the ALJ noted that Plaintiff's mother reported a greater degree of limitation in this area than Plaintiff alleged or the objective medical evidence supported—such as alleging that Plaintiff could not follow written instructions beyond a few sentences and could not finish what he started. (Tr. 22, 434, 479). However, after examining the objective medical evidence, the ALJ found that Plaintiff only had a moderate limitation in this area, citing that (although Plaintiff had several hospitalizations) intake examination notes from the hospitalizations indicated that while Plaintiff displayed manic or impulsive behavior, delusions, and auditory or visual hallucinations, once he was compliant with medication and detoxed he was alert and oriented x3 and denied hallucinations

and manic behaviors.  (Tr. 22-23, 595-996).  The ALJ cited residential facility records following Plaintiff's discharge that suggested he was oriented to time, place, person, and situation.  (Tr. 23).  The ALJ also cited records that showed that Plaintiff continued to seek treatment throughout 2022 and 2023 following discharge from residential facility, that consistently noted he was alert and oriented to time, place, person, and situation, and that noted he reported working on several projects at his house and apartment.  (Tr. 23).

The ALJ also considered Dr. Warren's March 18, 2022 consultative examination, which showed that Plaintiff was oriented to person, place, time, but not date, that his attention was only "mildly" impaired for conversational purposes with concentration/attention, that he was unable to perform reverse serial 7s or spell "world" backwards but was able to count backwards from 20 to 1, that with regard to fund of information he was able to state how many weeks were in a year and name 3 national leaders, that with regard to abstraction, he was able to describe similarities between an apple and orange ("both fruit") but was unable to interpret a proverb, that his thought processes were within normal limits but his content of thinking was preoccupied with persecutory delusions, that at the time of the examination he denied delusions, hallucinations, suicidal thoughts/ideations, and homicidal thoughts/ideations, and that he by his own admission was using methamphetamines at the time of the consultative examination.  (Tr. 23, 1299-1300). The ALJ accounted for Plaintiff's moderate limitation in concentrating, persisting, or maintaining pace in the RFC by limiting Plaintiff to only performing simple, routine, and repetitive tasks but not at a production rate pace where the pace of one's work affects, or is affected by, the pace of other's work or by any externally controlled system or process and only responding appropriately to occasional changes in a routine work setting.  (Tr, 23, 25).

As for adapting or managing oneself, the ALJ considered that Plaintiff stated he had no problems with self-care activities, that he reported no issues with dressing, bathing, caring for his hair, shaving, feeding himself, or using the toilet, that he reported being unable to prepare his own meals but that he could perform some household chores such as washing dishes or taking out trash, that he stated he could not pay bills or use a checkbook/money order but that he could count change and handle a savings account, and that he stated he handled stress "alright" and that it would not be a problem regarding handling changes in routine.  (Tr. 23, 444-45, 449).  The ALJ noted that Plaintiff's mother indicated that Plaintiff handled stress poorly and got upset very easily, that he was not honest about his paranoia or delusions for fear of being put in the hospital, and that he did not understand how his illness affected people around him.  (Tr. 23, 495, 523-24).  However, the ALJ found that the third-party function reports and handwritten notes by Plaintiff's mother were not consistent with Plaintiff's own allegations or supported by the objective medical evidence.  (Tr. 23).

The ALJ again noted that, after being detoxed and appropriately taking medication, Plaintiff's symptoms of paranoia, impulse control, delusions, and auditory/visual hallucinations improved and that Plaintiff denied auditory/visual hallucinations as well as suicidal and homicidal ideations.  (Tr. 23-24).  The ALJ also recounted medical records that showed Plaintiff was alert and oriented during his hospitalizations and at discharge, that following his discharge in 2021 he was oriented to time, place, person, and situation, he often denied delusions, obsessions, compulsions, and suicidal or homicidal thoughts, and he had good self-care and grooming, and that throughout 2022 and 2023 he was noted to have good self-care and grooming, to being oriented to time, place, person, and situation, to being able to perform several projects on his house, and to maintaining consistent mental health treatment.  (Tr. 24).  The ALJ noted that most recent

records from 2023 contained largely normal objective findings, with the exception of some issues with mood, and that normal findings included being oriented to time, place, person, and situation, having normal thought content, and denying delusions, obsession, compulsions, or hallucinations. (Tr. 24).

The ALJ also cited Dr. Warren's March 18, 2022 examination, which showed that Plaintiff's grooming and hygiene were normal and appropriate for his age, that his motor activity was normal, that when asked how he felt currently, he reported "alright" and when asked how he felt most of the time, he reported "sluggish," that his affect was appropriate to the situation, that he was oriented to person, place, time but not date, that his thought processes were within normal limits but his content of thinking was preoccupied with persecutory delusions, that at the time of the examination he denied delusions, hallucinations, suicidal thoughts/ideations, and homicidal thoughts/ideations, that his insight into acknowledging his problems and accepting responsibility for his actions was poor, as was his judgment with regard to social functioning and family relationships, that his response to mathematical and serial tasks, memory functions, fund of information, and ability to think in abstract terms appeared to be inconsistent with a level of functioning estimated to be within the borderline range of intelligence, and that he had used methamphetamines a week prior to his evaluation. (Tr. 24, 1299-1300). As additional support for finding that Plaintiff only had a moderate limitation in adapting or managing oneself, the ALJ cited Plaintiff's hearing testimony, which indicated that Plaintiff's substance abuse was in early remission, as Plaintiff testified to no longer using crystal methamphetamine over the past year (Tr. 51-52), and more recent evidence containing mostly normal/unremarkable mental status examination notes. (Tr. 24). The ALJ accounted for Plaintiff's moderate limitation in adapting or managing oneself in the RFC by limiting Plaintiff to only performing simple, routine, and

repetitive tasks but not at a production rate pace where the pace of one's work affects, or is affected by, the pace of other's work or by any externally controlled system or process and by only responding appropriately to occasional changes in a routine work setting.  (Tr. 24, 25).

Despite the thorough analysis of the "paragraph B" criteria, Plaintiff asserts that the ALJ failed to recognized the severity of his psychological impairments/limitations in the four "paragraph B" areas, arguing by way of example that as to the area of interacting with others "the ALJ's limitations to 'occasional, superficial interaction with co-workers and the public'" did not address his "inability to interact without becoming verbally or physically confrontational, irritable and paranoid."  (Doc. 8 at p. 6).[6]  Citing Dr. Warren's finding that Plaintiff was at least moderately-to-markedly impaired, Plaintiff argues that because the ALJ underestimated the severity of his psychotic disorder <u>generally</u>, his RFC was not supported by the record.  (*Id.*).

The ALJ discussed more extensively the entire record in determining Plaintiff's mental RFC and in analyzing Dr. Warren's opinion.  The ALJ first discussed Plaintiff's hearing testimony in which Plaintiff testified that he took medication and injections for his mental issues, that he took medication as prescribed unless he forgot, which happened once in a while, that he lost things

---

[6] Although Plaintiff asserts that the ALJ failed to recognize the severity of his psychological impairments/limitations in the four "paragraph B" areas, Plaintiff discusses by way of example only one area—interacting with others.  (Doc. 8 at p. 6).  As to challenges to the other three areas, Plaintiff fails to present any meaningful analysis or discussion in support of his perfunctory statement.  Because Plaintiff failed to develop any argument challenging the ALJ's conclusions regarding those three areas of function, the issue is waived.  *See Everett v. Comm'r of Soc. Sec.*, No. 8:20-CV-1242, 2022 WL 10622365 at *4 (M.D. Fla. Jan. 20, 2022) (citing *Outlaw v. Barnhart*, 197 F. App'x 825, 828 n.3 (11th Cir. 2006) (noting that the plaintiff listed an issue in his brief but "waived this issue because he did not elaborate on this claim or provide citation to authority about this claim")); *Jacobus v. Comm'r of Soc. Sec.*, 664 F. App'x 774, 777 n.2 (11th Cir. 2016) (stating that plaintiff's perfunctory argument was arguably abandoned); *Curtis v. Saul*, No. 8:19-cv-177, 2020 WL 1271061, *3 (M.D. Fla. Mar. 17, 2020) ("As an initial matter, the Plaintiff's argument—which consists of three sentences—is perfunctory, lacking in any meaningful analysis, and therefore waived.").  Regardless, the record demonstrates that the ALJ adequately considered the evidence in analyzing the "paragraph B" criteria and in ultimately determining Plaintiff's RFC.

often because of memory issues, that he had a history of crystal methamphetamine use but that he no longer used and had not used since approximately 1 year ago, that he got distracted easily and could not finish tasks, that he isolated often but spent some time with his nephew, and that he had past thoughts of harming himself and harming others and had difficulty communicating his feelings.  (Tr. 26, 51-58).  The ALJ also considered the testimony of Plaintiff's father who testified that he was unable to interact easily with Plaintiff because he gets confused and angry that Plaintiff cannot complete chores easily.  (Tr. 26, 67-68).

In discussing the objective medical record, the ALJ discussed Plaintiff's hospitalizations from January 17, 2019 to February 11, 2019 and from November 26, 2019 to December 9, 2019, stating that the hospitalization were notable for showing Plaintiff's mental health history but also noting that they occurred approximately 2 years and 1.5 years, respectively, prior to Plaintiff's application date for disability.  (Tr. 26-27).  As to the two hospitalizations, the ALJ noted the following:

> Bullock County Hospital provided records from 2019 showing that the claimant had several hospitalizations (Exhibit 1F). On January 17, 2019, the claimant presented to Bullock County Hospital after being picked up by police (Exhibit 1F, p. 3). He stated that he was unsure on why he was picked up but his violence risk was notable for thoughts of harm to others (Exhibit 1F, p. 4). Psychiatric findings indicated that he was oriented to person but not to place, time, or situation (Exhibit 1F, p. 7). He had a blunted and flat affect along with an anxious mood. He had an impaired memory and loose associations. His behavior was appropriate to the situation. He denied delusions but paranoia was present (Exhibit 1F, p. 8). He denied suicidal and homicidal ideations. He had impaired impulse control and comprehension along with poor insight. As a result, he was ultimately admitted under court order from January 17, 2019, until February 11, 2019. The undersigned further notes that he had positive urine drug screen for THC, methamphetamine, MDMA, and amphetamines (Exhibit 1F, p. 22). During his hospitalization, the claimant was able to participate in group therapy and identified overly negative thinking that led to his hospitalization (Exhibit 1F, p. 63). Progress notes indicated that he attended group therapy daily and was compliant with his medication regimen (Exhibit 1F, p. 68). Treatment records also indicated that he was improving with regard to insight and judgment as his hospitalization continued (Exhibit 1F, p. 172). His orientation also appeared to improve as he was oriented to time, place,

person, and situation, although he continued to express frustration as to his admission. His assessment/diagnosis was notable for chronic schizophrenia with an acute exacerbation as well as crystal meth use disorder. On the date of discharge, he was stable (Exhibit 1F, p. 188). He had a euthymic mood and restricted affect. He denied paranoia, hallucinations, homicidal thoughts, and suicidal thoughts. He was alert and oriented to time, place, and person with intact cognition. He had partial to fair insight and judgment. He was recommended for outpatient intensive treatment. ...

The claimant had another hospitalization at Bullock County Hospital in 2019, as the record showed he was admitted from November 26, 2019, until December 9, 2019 (Exhibit 1F, p. 228). His initial examination notes indicated he displayed manic and impulsive behaviors, delusions, and auditory and visual hallucinations (Exhibit 1F, p. 259). His drug screen was again positive for methamphetamine, THC, and amphetamines (Exhibit 1F, p. 224). His treatment records were unclear if his psychosis was related to his crystal methamphetamine use or part of his schizophrenia (Exhibit 1F, p. 331). However, once compliant with medication and detoxed, the undersigned notes that he was alert and oriented x3 (Exhibit 1F, p. 264). He was calm and cooperative, and he denied suicidal ideations, homicidal ideations, and auditory/visual hallucinations. He eventually accepted his scheduled medication without any difficulty and was compliant with his treatment regimen (Exhibit 1F, p. 272). He also interacted well with staff and peers with no noted acting act or behaviors to report once appropriately taking medication. On the date of discharge, he was stable (Exhibit 1F, p. 331). He had a euthymic mood and restricted affect. He had linear thinking and denied hallucinations, suicidal ideations, or homicidal ideations. He was alert and oriented in time, place, and person. His cognition was grossly intact, but he had poor insight and judgment. He was provided medication and recommended to follow-up with local area mental health in 2 weeks.

(Tr. 26-27, 228, 597-98, 601-02, 616, 657, 662, 776, 782, 818, 853, 858, 866, 925).

The ALJ then cited a third hospitalization that occurred from February 20, 2021 to March 3, 2021, noting that Plaintiff's alleged disability onset date was the date of his discharge for this admission but that his application date was April 13, 2021. (Tr. 27, 944-96). The ALJ noted that hospitalization records reflected positive urine drug screen for THC, methamphetamine, and amphetamines, that Plaintiff was admitted after making statements about self-injurious behavior as well as making threats to his parents and his local area mental health counselor, and that Plaintiff's behavior, insight, judgment, and thought content had all improved as noted on

examination from February 23, 2021. (Tr. 27, 951, 969, 971). The ALJ further noted that Plaintiff had some issues with isolation and participated minimally in group therapy but that this appeared to improve as shown in his discharge summary wherein it was noted that he gradually started coming to group therapy and participating in activities after detox and appropriately taking medication. (Tr. 27, 975, 981). The ALJ cited Plaintiff's discharge summary, which showed that at discharge Plaintiff had linear thought process and was in a pleasant mood with full affect, that he denied paranoia, hallucinations, suicidal ideations, and homicidal ideations, that he was alert and oriented to time, place, and person, and cognition was grossly intact, and that his insight and judgment were partial to fair. (Tr. 27-28, 981).

The ALJ noted that following this hospitalization Plaintiff sought some treatment at a residential facility where records showed a combination of group and individual therapy along with monthly injections throughout 2021 and that he sought consistent, formal mental health treatment throughout the remainder of 2021. (Tr. 28, 1151-1262). The records showed that in May 2021 Plaintiff participated in group therapy and that he was alert and attentive and gave positive feedback to others, that he reported some concerns over legal issues but stated that he was cooperating with officer follow-up appointments, that he denied suicidal or homicidal ideations, that he often participated in group therapy where he was attentive and observant with notations that he either provided positive or limited feedback, and that on May 25, 2021 he was discharged from the residual facility to his mother's house. (Tr. 28, 1158, 1187). June 2021 treatment records showed that Plaintiff was cooperative and alert, that he had good self-care and grooming, that he was oriented to time, place, person, and situation, that he had a euthymic mood and appropriate affect, that he had normal thought process and no delusions, obsessions, or compulsions, that he had no hallucinations, suicidal thoughts, or homicidal thoughts, that he reported doing well since

his discharge from the residential facility, that he also reported being sober and taking medications as prescribed, that he stated he had been working in the backyard and helping his brother prepare a yard for putting a pool in for a family, and that he stated that he was getting along well with family.  (Tr. 28, 1199-1200, 1205, 1245).  Examination notes from July 2021 showed that Plaintiff was cooperative and alert, that he had good self-care and grooming, that he was oriented to time, place, person, and situation, that he had normal speech rate, rhythm, volume, and reaction time, that he had an anxious mood but appropriate affect, that he had normal thought process and no delusions, obsessions, and compulsions, and that he denied hallucinations, suicidal thoughts, and homicidal thoughts.  (Tr. 28, 1248-49).  Records from August 2021 showed similar findings, including reports that Plaintiff had been working around the house, that he was enjoying having his own space and that it helped him get along better with his family, and that he had no major mood swings or voices, and that he was controlling his temper.  (Tr. 28, 1254-55, 1257).  Records from September 2021 and November 2021 showed continued injections as well as normal mental status findings.  (Tr. 28, 1264-98).  The ALJ observed that these records often noted no recommendations for hospitalizations, with the administrative record showing that his last hospitalization occurred from February 2021 to March 2021.  (Tr. 28).

The ALJ stated that Plaintiff continued to seek treatment throughout 2022.  (Tr. 28). Citing January 2022 treatment records, the ALJ noted that Plaintiff was cooperative and alert, that he had good self-care and grooming, that he was oriented to time, place, person, and situation, that his speech was normal in rate, rhythm, volume, and reaction time, that he had a euthymic mood and appropriate affect, that his thought process was normal, and he denied delusions, obsessions, and compulsions, and that he had no suicidal thoughts, homicidal thoughts, or hallucinations. (Tr. 28, 1303-04).  The ALJ again noted that Plaintiff continued to not be recommended for

hospitalization. (Tr. 28). February 2022 records revealed that Plaintiff reported that he had gotten into a fight with his brother and that he got angry "at times" and that examination notes indicated that he had a dysphoric mood but was cooperative and alert. (Tr. 28, 1347-49). The ALJ noted that Plaintiff otherwise had normal examination findings. (Tr. 28). In March 2022, Plaintiff stated that he was doing fairly well and that he was able to handle symptoms if he had them. (Tr. 28, 1353).

As to Dr. Warren's March 18, 2022 psychological examination, the ALJ noted that Plaintiff arrived at the examination with his mother, that his history of illness was detailed and his history of hospitalizations was noted, and that despite treatment Plaintiff stated he continued to have symptoms that included being easily agitated, paranoid delusions, and difficulty concentrating and completing tasks. (Tr. 29, 1299). However, the ALJ found that Plaintiff's statements were not entirely consistent with treatment records throughout 2021 as discussed in the ALJ's decision, as Plaintiff often denied delusions on examinations and his examination notes indicated that he was cooperative. (Tr. 29). In addition, the ALJ found that Plaintiff's statements that he worked around the house, that he had his own apartment just outside the house, and that he enjoyed his own space that helped him get along better with his family all seemed inconsistent with his reports to Dr. Warren that he was easily agitated and had difficulty concentrating and completing tasks. (Tr. 29). In considering Dr. Warren's findings and opinion, the ALJ again noted the following:

> The claimant also reported a history of substance abuse and that he last used crystal meth approximately 1 week ago and cannabis the previous day. On examination, his grooming and hygiene were normal and appropriate for his age. His motor activity was normal (Exhibit 6F, p. 2). His eye contact was normal, and his productivity and flow of speech was normal. He spoke in expressive tones and was understandable and coherent. No receptive language deficits were noted/observed. When asked how he felt currently, he reported "alright" and when asked how he felt most of the time, he reported "sluggish". His affect was appropriate to the situation, and he was oriented to person, place, time, but not date. His attention was only "mildly" impaired for conversational purposes. With concentration/attention,

he was unable to perform reverse serial 7s or spell "world" backwards, but he was able to count backwards from 20 to 1. With regards to immediate memory, he was unable to recall 3 objects after a 5-minute delay with interference. His recent memory appeared to be intact and his remote memory appeared to be intact. With regards to fund of information, he was able to state how many weeks were in a year and name 3 national lead[er]s. With regards to abstraction, he was able to describe similarities between an apple and orange ("both fruit") but was unable to interpret a proverb. His thought processes were within normal limits but his content of thinking was preoccupied with persecutory delusions. However, at the time of the examination, he denied delusions, hallucinations, suicidal thoughts/ideations, and homicidal thoughts/ideations. His insight into acknowledging his problems and accepting responsibility for his actions was poor, as was his judgment with regards to social functioning and family relationships. Overall, Dr. Warren noted that his response to mathematical and serial tasks, memory functions, fund of information, and ability to think in abstract terms appeared to be inconsistent with a level of functioning estimated to be within the borderline range of intelligence. After a comprehensive mental status examination, he was diagnosed with schizophrenia, paranoid type; stimulant use disorder, crystal methamphetamine, moderate; cannabis use disorder, mild to moderate; tobacco use disorder, cigarettes, moderate; and borderline intellectual functioning.

(Tr. 29, 1299-1300).

The ALJ noted that following Dr. Warren's examination Plaintiff continued to seek mental health treatment throughout the remainder of 2022 and throughout 2023 and that Plaintiff continued to undergo injections on a roughly monthly basis. (Tr. 29-30, 1323, 1365, 1369, 1373, 1381, 1410, 1414, 1422). The ALJ cited April 2022 records that indicated Plaintiff had normal findings, that he reported the absence of psychosis symptoms and no recent anger outbursts, and that he had reported helping his family painting their house. (Tr. 29-30, 1310-11, 1324). In May 2022, Plaintiff stated that he was doing well and voiced no problems. (Tr. 30, 1365). In June 2022, Plaintiff had an irritable and dysphoric mood, and he reported that he was upset about someone installing cabinets incorrectly and that he needed to fix it but did not have the funds. (Tr. 30, 1371-73). However, the records indicated that Plaintiff was cooperative and alert, had fair self-care and grooming, was oriented to time, place, person, and situation, had an appropriate affect, and he denied delusions, obsessions, compulsions, and hallucinations. (Tr. 30, 1371-72).

In August 2022, Plaintiff reported working on projects around the house with his family and that he was helping a friend move.  (Tr. 30, 1403).  Records from September 2022 reflected that Plaintiff had a depressed mood but all other mental status findings were normal, that he reported having "occasional" depression that appeared to be attributed to missing his mother who was in Birmingham and taking care of his nephew who was sick, and that he voiced no other problems.  (Tr. 30, 1412-14).  In October 2022, Plaintiff stated that he was doing "OK" and voiced no problems and reported his depression and anxiety had not been as bad as they used to be.  (Tr. 30, 1418, 1422).  In November 2022, Plaintiff reported missing a few days of medication and, as a result, felt really anxious and depressed but felt better after resuming his medication.  (Tr. 30, 1557).  December 2022 records indicated that Plaintiff had an anxious mood as well as auditory hallucinations, that he had a panic attack after having to hang Christmas lights by himself, that he occasionally heard voices, that he was frustrated about having no car or income, that he expressed some guilt about not being able to get gifts for everyone, and that he did not have any panic attacks since hanging Christmas lights, and that he was able to walk away and calm down.  (Tr. 30, 1542-43, 1549).

The ALJ noted that in January 2023 Plaintiff presented to Troy Regional Medical Center with a laceration above his left hip and that upon examination Plaintiff was found to be alert and not in distress; the record did not contain any psychiatric findings.  (Tr. 30, 1448-49).  The ALJ further noted that there was no reported alcohol use or illegal drug use, and there was no indication that Plaintiff needed to be hospitalized either for physical or psychiatric reasons.  (Tr. 30, 1448-54).  The ALJ indicated that Plaintiff presented approximately one week later for suture removal and that Plaintiff was alert and had an appropriate affect.  (Tr. 30, 1452-53).

The ALJ observed that Plaintiff continued to seek mental health treatment throughout 2023. (Tr. 30). In January 2023, Plaintiff reported some issues with short-term memory as well as having a recent argument with his brother, and examination notes indicated a depressed and anxious mood but that he otherwise had normal findings. (Tr. 30, 1524-25, 1527). In April 2023, Plaintiff reported that he had not recently worked on his apartment with "everything going on" regarding his nephew but that he still stayed in his apartment because he liked the private space. (Tr. 30, 1501). Plaintiff also reported to having a quick-tempered brother and that they argued frequently but that he was able to go to his apartment and calm down. (Tr. 30, 1501). Records from May 2023 indicated that Plaintiff had normal findings on examination. (Tr. 30, 1464-65). June 2023 records showed that Plaintiff was oriented to time, place, person, and situation, that he had normal speech rate, rhythm, volume, and reaction time, that he had a depressed mood and appropriate affect, that he had normal thought content, that he had no delusions, obsessions, compulsions, or hallucinations, and that he reported no recent anger outbursts and that he was getting along with everyone in his family. (Tr. 30-31, 1457, 1460).

The ALJ next discussed the opinion of the State agency mental consultant, C. Guarnaccia, Ph.D., stating:

> In an opinion at the initial level dated September 13, 2021, Dr. Guarnaccia opined that the claimant had the following mental limitations: he retains sufficient mental capacity to understand and remember short and simple one-to-two step instructions; he can maintain attention and concentration for at least 2-hour periods during an 8-hour workday utilizing all customary rest breaks; he would benefit from regular rest breaks and a slowed pace but would still be able to maintain an acceptably consistent work pace; contact with the public should be infrequent, casual, and non-intensive; he would be able to work in coordination and in the same general area with others on a casual basis as long as there was no intense interactions or close coordination requirements; corrective instruction should be presented in a simple, non-confrontational, and supportive manner; changes in the work setting should be infrequent, introduced gradually, and be well-explained; he will require assistance in setting appropriate goals and planning; and he is capable of responding appropriately to work hazards and taking appropriate precautions.

(Tr. 31-32, 114).    Finding that Dr. Guarnaccia's opinion was generally persuasive, the ALJ

explained:

> This opinion is generally persuasive because it is generally consistent with and
> supported by most of the file records. However, the undersigned notes that
> Dr. Guarnaccia only found a mild limitation in understanding, remembering, or
> applying information, and the record supports a greater degree of limitation in this
> area. The findings from the psychological consultative examiner, Dr. Warren, noted
> some issues with immediate memory, which was fairly consistent with recent
> complaints of issues with short-term memory. These findings would reasonably
> support a finding of a moderate limitation in understanding, remembering, or
> applying information, which the undersigned accounted for in the "paragraph B"
> criteria and residual functional capacity. In addition, Dr. Guarnaccia used language
> that was vague and/or not well-defined in accordance with Social Security Rules
> and Regulations (e.g., "non-confrontational", "non-intensive"). Overall, because
> the opinion noted moderate limitations in the other "paragraph B" criteria and
> appropriately accounted for such in the residual functional capacity, the
> undersigned finds that this opinion is generally persuasive, but the record as a whole
> supports additional functional limitation as it relates to understanding,
> remembering, or applying information.

(Tr. 32).  The ALJ also found the opinion of the State agency mental consultant, Linda Duke,

Ph.D., to be generally persuasive:

> In an opinion at the reconsideration level dated April 19, 2022, Dr. Duke opined
> that the claimant had the following mental limitations: he can understand,
> remember, and carry out short and simple instructions/tasks but not those more
> detailed or complex; he is able to concentrate and attend for reasonably periods of
> time of up to 2 hours; he can maintain attention sufficiently to complete simple
> tasks without the need for special supervision or more than usual and customary
> rest breaks; contact with the general public should not be a usual job duty; he can
> tolerate non-intense interaction with co-workers, supervisors, and the public but
> supervision should be tactful and supportive; and he can set simple, short-term,
> realistic work goals but will need assistance with those more long-term and
> complex. This opinion is generally persuasive because it is generally consistent
> with and supported by most of the file records. Dr. Duke appropriately found
> moderate limitations in each of the "paragraph B" criteria, which was consistent
> with the record as a whole, including more recent medical evidence showing that
> the claimant had good mental status examination notes. However, similar to
> Dr. Guarnaccia, Dr. Duke used language that was vague and/or not well-defined in
> accordance with Social Security Rules and Regulations (e.g., "non-intense",
> "tactful").

(Tr. 32, 123-24).

In assessing the opinion of Dr. Warren, the ALJ cited that Dr. Warren opined that Plaintiff's ability to function independently in an age-appropriate manner was moderately to markedly impaired and that his ability to remember and carry out instructions, as well as respond appropriately to supervisors, co-workers, and work pressures in a work setting, was moderately to markedly impaired at that time.  (Tr. 32-33, 1301).  Finding Dr. Warren's opinion somewhat persuasive, the ALJ noted that Plaintiff was using methamphetamines at the time of the consultative examination and, although he might not have been under the influence at the evaluation, his evaluation was during the time of admitted methamphetamine use.  (Tr. 33).  The ALJ stated that more recent evidence, including the hearing testimony, suggested that Plaintiff's substance abuse was in early remission and that such evidence, along with recent objective examination notes from 2023, showed findings that included being oriented to time, place, person, and situation, having normal speech rate, rhythm, volume, and reaction time, having normal thought content, having no delusions, obsessions, compulsions, or hallucinations, and reporting no recent anger outbursts and that he was getting along with everyone in his family, coincided with Plaintiff's reports that he was no longer using methamphetamines.  (Tr. 33). The ALJ therefore found that the record as a whole better supported the conclusion that Plaintiff was only moderately impaired in the areas addressed by Dr. Warren.  (Tr. 33).  The ALJ concluded that Dr. Warren's opinion was somewhat persuasive to the extent that it was supported by the examination notes and was consistent with some of the earlier file records but that more recent records, as well as Plaintiff's hearing testimony, better supported the conclusion that Plaintiff was moderately impaired as opposed to markedly impaired.  (Tr. 33).

As stated previously, the ALJ—and not a doctor—has the duty to determine a claimant's RFC. *Moore*, 649 F. App'x at 945. Thus, an ALJ "is not required to base[] [the] RFC on a doctor's opinion." *McCarver v. Comm'r of Soc. Sec.*, No. 4:20-CV-1053, 2022 WL 860190 at *6 (N.D. Ala. Mar. 22, 2022) (citing *Castle v. Colvin*, 557 F. App'x 849, 853-54 (11th Cir. 2014)); *Vilches v. Kijakazi*, No. 3:21-CV-15, 2022 WL 11455775 at *2 (M.D. Ala. Oct. 19, 2022) ("Indeed, 'an ALJ's RFC assessment need not match or mirror the findings or opinions of any particular medical source ... because the reasonability of assessing the RFC rests with the ALJ.'") (citation and internal quotation marks omitted). While state agency medical or psychological consultants are considered experts in Social Security disability evaluation, "[a]dministrative law judges are not required to adopt any prior administrative findings, but they must consider this evidence according to §§ 404.1520b, 404.1520c, and 404.1527, as appropriate." 20 C.F.R. § 404.1513a(b)(1). The regulations further provide that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). "Thus, an ALJ need not adopt every part of an opinion that the ALJ finds persuasive." *Rivera Misla v. Comm'r of Soc. Sec.*, No. 6:20-CV-1076, 2021 WL 2417084 at *2 (M.D. Fla. June 14, 2021); *Vilches*, 2022 WL 11455775 at *3 ("Moreover, the ALJ provides an RFC by considering the entirety of the evidence rather than a single opinion—not simply regurgitating in the RFC from even persuasive medical opinions, and some slight deviation may be appropriate."). *See also Szoke v. Kijakazi*, No. 8:21-CV-502, 2022 WL 17249443 at *9 n.12 (M.D. Fla. Nov. 28, 2022) (collecting cases). Nor is an ALJ "compelled to 'specifically refer to every piece of evidence in his decision.'" *Szoke*, No. 8:21-CV-502, 2022 WL 17249443 at *9 (citation omitted).

The record shows that the ALJ properly applied the regulations in considering the persuasiveness of Dr. Warren's opinion under 20 C.F.R. § 416.920c.  Throughout the ALJ's decision, the ALJ extensively discussed Dr. Warren's mental status findings and noted that at the time of Dr. Warren's March 18, 2022 examination Plaintiff reported that he had used methamphetamines a week earlier and cannabis the previous day.  (Tr. 21-24, 29, 33).  The ALJ found that "more recent evidence," including the hearing testimony, suggested that Plaintiff's substance abuse was in early remission and that this evidence, along with "recent objective examination notes from 2023" showed findings that included Plaintiff's being oriented to time, place, person, and situation, having normal speech rate, rhythm, volume, and reaction time, having normal thought content, having no delusions, obsessions, compulsions, or hallucinations, and reporting no recent anger outbursts and that he was getting along with everyone in his family, which coincided with his reports that he was no longer using methamphetamines.  (Tr. 33). The ALJ stated that the records after the consultative examination, including evidence that Plaintiff's substance abuse was in early remission, leaned more towards moderate than marked impairment.  (Tr. 31).  The ALJ discussed that Plaintiff continued to not be recommended for hospitalization, with his last hospitalization occurring from February 2021 to March 2021, and that mental health treatment records in 2022 and 2023 consistently noted that Plaintiff did not need to be psychiatrically admitted.  (Tr. 28, 31).  The ALJ concluded that the "record as a whole" better supported that Plaintiff was only moderately impaired in the areas addressed by Dr. Warren as opposed to markedly impaired and that "more recent records" as well as Plaintiff's hearing testimony as detailed in the ALJ's decision better supported that Plaintiff was moderately impaired as opposed to markedly impaired.  (Tr. 33).

Plaintiff challenges the ALJ assessment of Dr. Warren's opinion, arguing that Dr. Warren's opinion, as an examining psychologist, deserved more weight than given by the ALJ. (Doc. 8 at p. 10). However, an ALJ is no longer required (or allowed) to assign specific weight to a medical opinion based on a formal hierarchy. *Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433 at *3 (11th Cir. Sept. 8, 2023) ("Under the applicable regulations, the ALJ had no obligation to state the weight given -- or the degree of persuasiveness assigned -- to Dr. Jorge's opinion."); *Morris v. Soc. Sec. Admin., Comm'r*, No. 2:21-CV-00029, 2022 WL 303303 at *3 (N.D. Ala. Feb. 1, 2022) ("The current regulations followed by ALJs in reaching their decisions affirmatively disclaim any formal physician hierarchy. In conducting their analysis, ALJs 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) including those from [the claimant's] medical sources.'") (quoting 20 C.F.R. § 404.1520c(a)). The ALJ thus did not err by not giving controlling weight to Dr. Warren's opinion. An ALJ's determination is required to be based on all evidence in the record. *See, e.g., Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144 at *4 (11th Cir. Jan. 10, 2022) ("This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion."). *See also* 20 C.F.R. § 416.920(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").

Plaintiff also argues that the ALJ's assessment of Dr. Warren's opinion was erroneous, as Dr. Warren's opinion was consistent with other evidence in the record. (Doc. 8 at p. 10). However, the question before the court is limited to whether the ALJ's decision—not Dr. Warren's opinion— is supported by substantial evidence. *See Vergara*, 2023 WL 5814433 at *3 ("Vergara disputes

the ALJ's stated reasons and argues that Dr. Jorge's opinion is consistent with other evidence in the record.  But the question before us on appeal is limited to whether the ALJ's decision -- not Dr. Jorge's opinion -- is supported by substantial evidence.  That Dr. Jorge's opinion might be consistent with some record evidence is not enough to overturn the ALJ's decision.").  Based upon the evidence as a whole, the court concludes that the ALJ's findings were supported by substantial evidence.  The ALJ's lengthy and thorough discussion and analysis of the evidence was sufficient to support the conclusion that Plaintiff's severe impairments did produce limitations, that those limitations were moderate, and that the RFC determination adequately accounted for the limitations.  The record showed that the ALJ properly considered the opinion evidence in accordance with 20 C.F.R. § 416.920c.  The ALJ's conclusions were based upon the entire evidence.  The evidence to which Plaintiff cites does not undermine the ALJ's determination.

Plaintiff "'must do more than point to evidence in the record that supports h[is] position; [he] must show the absence of substantial evidence supporting the ALJ's conclusion.'"  *Thompkins v. Kijakazi*, No. 2:21-CV-216, 2022 WL 2517185 at *7 (M.D. Ala. July 6, 2022) (quoting *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam)) (brackets added).  "The fact that Plaintiff disagrees with the ALJ's decision, or that there is other evidence in the record that weighs against the ALJ's decision, does not mean that the decision is unsupported by substantial evidence."  *Lanier v. Colvin*, No. CV414-004, 2015 WL  3622619 at *1 (S.D. Ga. June 9, 2015) (citing *Crawford*, 363 F.3d at 1158-59); *Bouie v. Astrue*, 226 F. App'x 892, 894 (11th Cir. 2007) ("An ALJ may reject the opinion of any physician when the record supports a contrary conclusion.  The resolution of conflicting evidence is the function of the ALJ, not the Court.") (citation omitted).  Put most simply, "[t]o the extent Plaintiff disagrees with the ALJ's interpretation of that evidence, that is not a ground for remand."  *Horne v. Comm'r of Soc. Sec.*,

No. 2:20-CV-181, 2021 WL 3023679 at *5 (M.D. Fla. June 28, 2021), *report and recommendation adopted*, No. 2:20-CV-181, 2021 WL 3022727 (M.D. Fla. July 16, 2021) (citing *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014)); *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) ("'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner.' 'If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it.'") (citations omitted).

## B.   Evaluation of Plaintiff's and His Family's Subjective Complaints

Plaintiff argues that the ALJ did not properly consider his subjective statements and those of his parents.  (Doc. 8 at pp. 11-13).[7]  In response, the Commissioner contends that the ALJ properly evaluated the subjective statements.  (Doc. 11 at p. 13).

In determining whether a claimant is disabled, the claimant's symptoms, including pain, are considered to the extent they are reasonably consistent with objective medical evidence and other evidence.  20 C.F.R. § 416.929(a).  The Commissioner will consider a claimant's statements about his or her symptoms and any description that the claimant's medical sources or nonmedical sources may provide about how the symptoms affect the claimant's activities of daily living and ability to work.  *Id*.  However, a claimant's statements about pain or symptoms alone are not

---

[7] Plaintiff also perfunctorily states without any analysis that he "continues to assert, he meets Listing 12.03, 'Schizophrenia spectrum and other psychotic disorders.'" (Doc. 8 at p. 10).  Plaintiff does not discuss the criteria under Listing 12.03 or provide any analysis as to how he meets the listing.  Therefore, the argument is waived.  *See Banks for Hunter v. Comm'r, Soc. Sec. Admin.*, 686 F. App'x 706, 713 (11th Cir. 2017) ("A passing reference to an issue in a brief is insufficient, and the failure to make arguments and cite authorities in support of an issue results in waiver."); *Jacobus*, 664 F. App'x at 777 n.2 (stating that the plaintiff's perfunctory argument was arguably abandoned); *Curtis*, 2020 WL 1271061 at *3 ("As an initial matter, the Plaintiff's argument— which consists of three sentences—is perfunctory, lacking in any meaningful analysis, and therefore waived.").

enough to establish the existence of a physical or mental impairment or disability.  *Id.*; SSR 16-3p, 2017 WL 5180304 at *2 (S.S.A. Oct. 25, 2017); *Turner v. Kijakazi*, No. 1:19-CV-774, 2021 WL 3276596 at *9 (M.D. Ala. July 30, 2021) ("[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms.").  To establish a disability based on testimony of symptoms, the claimant must provide evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms, or (2) evidence establishing that the objectively determined medical condition could be reasonably expected to give rise to the alleged symptoms.  *Carroll v. Soc. Sec. Admin., Comm'r*, No. 6:21-CV-00014, 2022 WL 3718503 at *12 (N.D. Ala. Aug. 29, 2022) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002)); 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *3.

"Consideration of a claimant's symptoms therefore involves a two-step process, wherein the SSA first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain." *Mixon v. Kijakazi*, No. 8:20-CV-2991, 2022 WL 2816964 at *3 (M.D. Fla. July 19, 2022); 20 C.F.R. § 416.929(a)-(b); SSR 16-3p, 2017 WL 5180304 at *2-3.  Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ must then consider all of the evidence in the record to evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the claimant's capacity for work.  SSR 16-3p, 2017 WL 5180304 at *3-4; 20 C.F.R. § 416.929(a)-(c); *Stromgren v. Kijakazi*, No. 3:21-CV-908, 2022 WL 1205347 at *5 (N.D. Fla. Mar. 11, 2022), *report and recommendation adopted*, No. 3:21-CV-908, 2022 WL 1204519 (N.D. Fla. Apr. 22, 2022).  In doing so, SSR 16-3p and the regulations require an ALJ to consider certain

factors, including: (1) daily activities; (2) location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken; (5) treatment, other than medication, to relieve pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms. SSR 16-3p, 2017 WL 5180304 at *8-9; 20 C.F.R. § 416.929(c)(3).

The ALJ will also consider whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between the claimant's statements and the rest of the evidence, including the history, signs and laboratory findings, and statements by treating and non-treating sources or other persons about how the symptoms affect the claimant.  20 C.F.R. § 416.929(c)(4).  "However, Eleventh Circuit case law does not require an ALJ to enumerate every factor in every decision."  *Alexander v. Comm'r of Soc. Sec. Admin.*, No. 6:20-CV-01862, 2022 WL 4291335 at *5 (N.D. Ala. Sept. 16, 2022) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (concluding that the ALJ need not cite to "particular phrases or formulations" but must provide reasons that would enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole).  If the ALJ discredits a claimant's subjective statements, the ALJ "must articulate explicit and adequate reasons for doing so."  *Foote*, 67 F.3d at 1561-62; *Patterson v. Kijakazi*, No. 8:21-CV-359, 2022 WL 3028058 at *3 (M.D. Fla. Aug. 1, 2022).  That is, "[w]here proof of a disability is based upon subjective evidence and a credibility determination is a critical factor in the decision, if the ALJ discredits the claimant's testimony as to his subjective symptoms, the ALJ must either explicitly discredit such testimony or the implication from the ALJ's opinion must be so clear as to amount to a specific credibility finding."  *Martinez v. Comm'r of Soc. Sec.*, No. 21-12116, 2022 WL 1531582 at *2 (11th Cir. May 16, 2022) (citing *Foote*,

67 F.3d at 1562). "Subjective complaint credibility is the province of the ALJ." *Williams v. Kijakazi*, No. 2:20-CV-277, 2022 WL 736260 at *2 (M.D. Ala. Mar. 10, 2022) (citing *Mitchell*, 771 F.3d at 782).

Here, the record reflects that the ALJ sufficiently addressed the subjective statements of Plaintiff and his parents in accordance with the regulations and that the ALJ considered the entire medical record in evaluating the subjective statements:

> In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSR 16-3p. The undersigned also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 416.920c.
>
> …
>
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because the medical evidence does not support the claimant's allegations of severe and chronic limitation of function to the degree that it would preclude the performance of all substantial gainful activity. Rather, the claimant's allegations about the intensity, persistence, and limiting effects of his symptoms exceed all that can reasonably be expected from his impairments and are inconsistent with treatment records.

(Tr. 25-26).

The ALJ then proceeded to discuss the medical record extensively. The ALJ discussed the hearing testimony of Plaintiff and his father, and the ALJ specifically discussed the third-party function reports and handwritten notes. (Tr. 20-23, 26, 434, 437-38, 470, 476, 479, 495, 523-24). The ALJ noted that Plaintiff's mother's third-party function reports and handwritten notes alleged a greater degree of limitation in certain areas of functioning than Plaintiff alleged or the objective

medical evidence supported, such as, for example, that Plaintiff needed reminders to take care of

personal needs, grooming, and medication, all of which was inconsistent with Plaintiff's own

statements. (Tr. 20). The ALJ also noted that medical records showed that Plaintiff's memory

improved after receiving appropriate treatment and that his memory was adequate by discharge of

hospitalization, that Plaintiff's symptoms appeared to improve once he had detoxed and received

appropriate medication, that hospitalization records noted that Plaintiff was cooperative, interacted

well with staff and peers, and engaged with group therapy, and that Plaintiff's participation in

group therapy was good and that he gave feedback to others. (Tr. 20, 22-23). After thoroughly

discussing the record, the ALJ stated the following:

> As discussed above, the medical evidence of record is not entirely consistent with
> the claimant's subjective complaints regarding his symptoms and degree of
> limitation. The record contained 3 psychiatric hospitalizations, two of which were
> prior to his application date. The undersigned further notes that all three
> hospitalizations showed positive urine drug screens as well. The claimant's last
> psychiatric hospitalization was in 2021, with no indication that he was
> psychiatrically admitted in 2022 and 2023. In fact, as noted above, mental health
> treatment records in 2022 and 2023 consistently noted that the claimant did not
> need to be psychiatrically admitted. Furthermore, his hospitalizations were notable
> for positive urine drug screens, but the claimant testified at the hearing to being
> sober for approximately one year and that his substance abuse was in early
> [remission]. Following his discharge in 2021, the claimant underwent a brief stint
> at a residential facility before he was ultimately discharged to his parent's house.
> He continued mental health treatment in 2022 and 2023, but these treatment records
> were largely unremarkable and/or normal with the exception of some issues with
> depressed or anxious mood. He reported being able to do projects around the house
> and although he complained about some issues with his brother, the claimant
> reported getting along with everyone else in his family and that he was better able
> to control his emotions as it related to his brother.

(Tr. 31).

In sum, the ALJ considered all allegations from the hearing testimony and function reports,

along with all of the medical evidence, and properly found that Plaintiff's subjective complaints

were unsupported for the reasons explained throughout the ALJ's decision—including more recent

evidence containing largely normal mental status examination findings and the fact that Plaintiff showed improvement once he had detoxed and received appropriate medication.  And the ALJ properly considered both objective and subjective evidence in evaluating Plaintiff's statements regarding the intensity, persistence, or limiting effects of his symptoms. *See* 20 C.F.R. § 416.929(c)(3); SSR 16-3p, 2017 WL 5180304 at *8-9.

"[A]n ALJ is not required to accept a claimant's subjective allegations of pain or symptoms." *Turner*, 2021 WL 3276596 at *9; 20 C.F.R. § 416.929(a) ("[S]tatements about [a claimant's] pain or other symptoms will not alone establish that [a claimant is] disabled.").  The court finds that the ALJ properly evaluated Plaintiff's subjective complaints in light of the evidence of record and formulated appropriate RFC restrictions to accommodate the limitations arising from his mental impairments.  Credibility determinations are the province of the ALJ, *Mitchell*, 771 F.3d at 782, and the ALJ sufficiently cited evidence in the record for finding that Plaintiff's statements were not entirely consistent with the record as a whole.  *See Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011) (footnote omitted) (The appropriate question for a reviewing court "is not ... whether [the] ALJ could have reasonably credited [the claimant's] testimony, but whether the ALJ was clearly wrong to discredit it.").

Te ALJ properly considered the entire administrative record in evaluating the consistency of Plaintiff's statements and adequately articulated reasons for finding the subjective statements to be inconsistent with the record.  While Plaintiff may cite to some evidence that the ALJ did not specifically discuss, nothing requires the ALJ to discuss every piece of evidence so long as substantial evidence supports the ALJ's decision. *See Coley*, 771 F. App'x at 917; *Dyer*, 395 F.3d at 1211; *Gogel*, 2021 WL 4261218 at *9; *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) ("Simply because the ALJ chose not to adopt further limitations on Mr. Carson's

ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations."). Although Plaintiff cites evidence that he believes supports his subjective complaints or contradicts the ALJ's assessment (Doc. 8 at pp. 11-15), that is not enough to obtain a remand when, as here, substantial evidence supports the ALJ's decision.  *Crawford*, 363 F.3d at 1158-59; *Mitchell*, 771 F.3d at 782.

## V.   Conclusion

After carefully and independently reviewing the record, and for the reasons stated above, the court concludes as follows:

- that Plaintiff's motion for summary judgment (Doc. 8) is due to be **DENIED**;

- that the Commissioner's motion for summary judgment (Doc. 11) is due to be **GRANTED**; and

- that the Commissioner's decision is due to be **AFFIRMED**.

A separate judgment will issue.

**DONE** this the 1st day of October 2024.

_____
**CHAD W. BRYAN**
**UNITED STATES MAGISTRATE JUDGE**